UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:24-cv-62225

ANDREE CAMPBELL,

    Plaintiff,

vs.

KATHERINE RODRIGUEZ, D.M.D., P.A.,
a Florida Professional Association,

    Defendant.

_____/

## COMPLAINT

Plaintiff ANDREE CAMPBELL, by and through undersigned counsel, sues Defendant KATHERINE RODRIGUEZ, D.M.D., P.A., a Florida Professional Association, and alleges as follows:

1. This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Plaintiff ANDREE CAMPBELL is a resident of Broward County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C.

1

§12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from retinopathy, which is a permanent eye and medical condition that substantially and significantly impairs her vision and limits her ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, she is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.      Because she is blind, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,'

the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8. Defendant is a Florida Professional Association authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a dental office offering a variety of services, with expertise in general and cosmetic dentistry, the office Plaintiff intended to patronize in the near future (and as early as November and/or early December 2024), which is located at 1330 Coral Way, Suite 100, Miami, FL 33145.

9. Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

10. Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a dental office under the name "One Dental". The "One Dental" office is open to the public. As the owner, operator, and/or controller of this dental office, Defendant is defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181(7)(E) and 28 C.F.R. §36.104(5).

12. Because Defendant is a location open to the public, the Defendant's physical location is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13. Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.onedentalmiami.com/ (the "Website"). Some functions of the Website are to provide the public with information on the location, hours, and contact details of Defendant's dental office, to present a variety of dental services including general, cosmetic, and restorative treatments, and to allow users to book appointments, view service details, access information about available insurance and payment options, read details about the specialists working at the practice, learn about the technologies used in their services, register as a new patient, access the Smile Gallery to view before-and-after results, access the Office Tour page to view videos and photos of the office and team, read blog posts on dental topics, find answers to frequently asked questions, and explore patient reviews.

14. The Website also serves Defendant's physical location by providing detailed information on available dental services, office hours, information about the dentists, technologies used, and other information that Defendant is interested in communicating to its customers.

15. Because the Website allows the public to secure information about the location, hours, and contact details of Defendant's dental office, view a variety of dental services including general, cosmetic, and restorative treatments, book appointments, view service details, access information about available insurance and payment options, read details about the specialists working at the practice, learn about the technologies used in their services, register as a new patient, access the Smile Gallery to view before-and-after results, access the Office Tour page to view videos and photos of the office and team, read blog posts on dental topics, find answers to frequently asked questions, and explore patient reviews, the Website has a nexus to, and is an extension of and gateway to services, privileges, and advantages of Defendant's physical location, which is a place of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA,

the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar location and business. Furthermore, the Website is a necessary service and privilege of Defendant's physical location in that, it acts as a critical point of sale for the location, it enables users of the Website to make purchases of Defendant's services that is also available for purchase in, from, and through its physical location.

16. Because the public can find information about the location, hours and contact details of Defendant's dental office, view a variety of dental services including general, cosmetic, and restorative treatments, book appointments, view service details, access information about available insurance and payment options, read details about the specialists working at the practice, learn about the technologies used in their services, register as a new patient, access the Smile Gallery to view before-and-after results, access the Office Tour page to view videos and photos of the office and team, read blog posts on dental topics, find answers to frequently asked questions, and explore patient reviews, the Website is an extension of, and gateway to the physical location, which is a place of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical location.

17. At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not

5

discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical location. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18. Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as November and/or early December 2024), Defendant's physical location located at 1330 Coral Way, Suite 100, Miami, FL 33145, and to learn about brick-and-mortar location, view a variety of dental services including general, cosmetic, and restorative treatments, book appointments, view service details, access information about available insurance and payment options, read about the team, learn about the technologies used in their services, register as a new patient, access the Smile Gallery to view before-and-after results, access the Office Tour page to view videos and photos of the office and team, read blog posts on dental topics, find answers to frequently asked questions, and explore patient reviews. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early as November and/or early December 2024) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19. The opportunity to find information about the location, hours and contact details of Defendant's physical location, analyze and compare dental services, book appointments, access information about available insurance and payment options, read details about the specialists working at the practice, learn about the technologies used in their services, register as a new patient, access the Smile Gallery to view before-and-after results, access the Office Tour page to view videos and photos of the office and team, read blog posts on dental topics, find answers to frequently asked questions, and explore patient reviews, and more from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's

6

home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20. Like many consumers, Plaintiff accesses a number of websites at a time to help plan her store visits and to compare services, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

21. Beginning in October 2024, Plaintiff attempted on multiple occasions to utilize the Website to browse through the services and online offerings, learn about the available dental procedures and options, find information about the brick-and-mortar location, check office hours with the intent to book an appointment. Plaintiff also attempted to access and utilize the Website in her capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

22. Specifically, Plaintiff intended to make an appointment with a dentist. On or about October 8, 2024, looking for "dental offices in Miami", she wanted to find a local clinic for general examination and for addressing the existing dental concerns, Plaintiff discovered Defendant's website. Using the JAWS screen reader, she attempted to navigate the site and explore its services. However, due to multiple accessibility issues, including the absence of a bypass block and inaccessible sub-menus in the navigation section that could not be accessed via keyboard, her navigation on the website was inefficient. When she attempted to book an appointment, she found that the calendar for selecting a preferred date was also inaccessible via keyboard, preventing her from completing the process.

23. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website

contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. Landmarks were not properly inserted into the home page. Plaintiff tried to navigate the home page using landmarks but could not access its main regions because of landmark inaccurate markup;

b. "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

c. Plaintiff attempted to follow links on the website but received no prior warning that the links would open in new windows. As a result, Plaintiff unsuccessfully tried to use the browser's "Back" function to return to the previous page, which caused disorientation; for example, with social media links;

d. Links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of context; for example, the address link didn't announce that it would open the address on Google Maps;

e. Sub-menu elements which contained drop-down menus could not be accessed from the keyboard. Plaintiff tried to use "tab" or "arrow" keys to no avail. The website had functionality that was dependent on the specific devices such as a mouse, and was not available to the legally blind users;

f. The Navigation menu contained elements with drop-down menu, and they did not announce their state - "collapsed" or "expanded". As a result, Plaintiff had difficulty in navigating the menu and could not determine if any additional links or categories were skipped;

g. Prerecorded video-only found on the home page. Text transcript or audio track for a silent video was not provided and Plaintiff did not receive any information from the non-text content placed on the page;

h. The images on the homepage lacked alternative text, and Plaintiff did not receive any description of the non-text content;

i. Plaintiff encountered incorrectly marked up lists of services on the home page. They had visual appearance of lists but were incorrectly programmatically formatted and did not announce the number of elements included in them. Thus, Plaintiff was unaware that different links and services were included in the same page section;

j. On the website, Plaintiff encountered overly long link descriptions (exceeding 100 characters), which were difficult to interpret using screen reader software. For example, the link to information about the dentist was announced in an overly lengthy manner,

    making it confusing for the visually impaired user;

k. Non-interactive elements were marked as keyboard-focusable (with tabindex="0" applied), which prevented Plaintiff from understanding their purpose, as they were not truly interactive and lacked the appropriate role attribute. Additionally, tabbing through these extra focusable elements required extra effort and time for Plaintiff to locate relevant content on the website. For example, the review section on the home page received focus and was announced by the screen reader, even though it was not interactive;

l. One of the telephone numbers in the Content Info section was displayed as plain text, making it non-interactive and inaccessible to screen reader software. Consequently, Plaintiff was unable to access all contact information presented on the website;

m. Interactive elements that functioned as "buttons" were not correctly coded. Instead of applying a "role" attribute to define their function, these elements were built using tags such as <a>. As a result, the screen reader software read these elements incorrectly, causing confusion for Plaintiff due to receiving ambiguous information about the focused element. For instance, the frequently asked questions tabs were announced as links, despite behaving like buttons by collapsing and expanding answers;

n. Interactive elements on the website could not be accessed using the Tab key, and there were no helpful instructions provided on how to navigate these elements with the arrow keys. As a result, Plaintiff was unaware of certain interactive elements on the page. For example, the calendar used for selecting a date in the booking process was inaccessible via keyboard, preventing the visually impaired user from completing the booking due to the inability to select the desired date;

o. No alert dialog is displayed when a user enters invalid data into a form field and attempts to submit the form. The form does not indicate errors in the webpage title or at the top of the page. For example, when an incorrectly formatted email was entered, the input border turned red, but no error message was displayed, and the screen reader did not announce the issue.

24. Accordingly, Defendant's Website was incompatible with Plaintiff's screen reading software and keyboard.

25. The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same shopping experience, with the same access to the services, sales, services, discounts, as provided at the Website and in the physical location as the non-visually disabled public.

26. Plaintiff desires and intends, in the near future once the Website's access barriers

are removed or remedied, to patronize Defendant's physical store located at 1330 Coral Way, Suite 100, Miami, FL 33145, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27. Because of the nexus between Defendant's physical location and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical location for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical location, which is a place of public accommodation subject to the requirements of the ADA.

28. On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29. On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30. On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendant has not instituted a Web Accessibility User

Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

33. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

36. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

38. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's services offered on the Website and in the physical location from their homes.

39. Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical location in contravention of the ADA.

40. Public accommodations under the ADA must ensure that their places of public

accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41. The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

42. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

46. Notice to Defendant is not required because of Defendant's failure to cure the violations.

47. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48. Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

### COUNT I – VIOLATION OF THE ADA

49. Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50. Pursuant to 42 U.S.C. §12181(7), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

51. Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to find information about the location, hours and contact details of Defendant's dental office, view a variety of dental services including general, cosmetic, and restorative treatments, book appointments, view service details, access information about available insurance and payment options, read details about the specialists working at the practice, learn about the technologies used in their services, register as a new patient, access the Smile Gallery to view before-and-after results, access the Office Tour page to view videos and photos of the office and team, read blog posts on dental topics, find answers to frequently asked questions, and explore patient reviews. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical location. Further, the Website serves to augment Defendant's physical location by providing the public information about the location and by educating the public as to Defendant's available services sold through the Website and in, from, and through the physical location.

52. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the

nature of such goods, services, facilities, privileges, advantages or accommodations."

54. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical location in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57. Further, Plaintiff has engaged an ADA website compliance expert herein, Robert D. Moody, to review Defendant's Website and confirm that the issues that Plaintiff encountered on the Website do, in fact, exist and are, in fact, barriers to accessibility for the visually-impaired. Mr. Moody's Expert Declaration is attached to this Complaint as Exhibit "A."

58. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

60. There are readily available, well-established guidelines on the internet for making

websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, ensuring the presence of a bypass block, making sure that images have descriptive alternative text, and ensuring that all interactive elements on the website are accessible via the keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

61. Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

62. The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

63. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

64. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

65. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66. As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

67. As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar location, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical location.

68. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical location through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website

being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

 c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical location and becoming informed of and purchasing Defendant's services, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical location.

70.  Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal

disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months

---

[1] 

thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

DATED:  November 22, 2024.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
*Counsel for Plaintiff*
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By:      */s/ Aleksandra Kravets, Esq.*
 Aleksandra Kravets, Esq.
 FBN: 120562